

FILED
'01 NOV -9 PM 4:04

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ELAINE L. CHAO, ) | CASE NO. 1:00 CV 2793 |
| Secretary of Labor, ) | |
| United States Department of Labor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| BARBARA WALDEN, ) | |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| LOCAL 19, BAKERY, CONFECTIONARY, ) | |
| TOBACCO WORKERS AND GRAIN ) | |
| MILLERS INTERNATIONAL UNION, ) | |
| AFL-CIO, ) | |
| ) | |
| Defendant. ) | MEMORANDUM OPINION |
| ) | AND ORDER |

This matter is before the Court upon the following Motions: (1) Plaintiff Elaine L. Chao's Motion for Summary Judgment (Document #32); (2) Defendant Local 19's Motion for Summary Judgment (Document #33); and (3) Plaintiff-Intervenor Barbara Walden's Motion for Summary Judgment (Document #35). All parties have filed Briefs in Opposition. For the following

reasons, Plaintiff's Motion for Summary Judgment is GRANTED. Further, to the extent that Plaintiff-Intervenor moves for the Court to declare the elections of Dan Kolar, Pete Koleff, and Vince Bianchi null and void, her Motion for Summary Judgment is GRANTED (IN PART). Accordingly, Defendant's Motion for Summary Judgment is DENIED.

## Procedural Background

Plaintiff Elaine L. Chao, Secretary of Labor, brought the within Complaint against Defendant Local 19, Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, AFL-CIO (hereinafter "Local 19"), pursuant to Title IV of the Labor Management Reporting and Disclosure Act (hereinafter "LMRDA") of 1959, 29 U.S.C. §§ 401 *et seq*. The litigation was initiated as a result of the protest and complaint by Plaintiff-Intervenor, Barbara Walden, of the election of officers for Defendant Local 19. The Complaint alleges that Local 19 violated 29 U.S.C. § 481(e) by permitting three ineligible persons to run for office--one for Treasurer and two for Trustee positions. By way of the instant action, Plaintiff requests that this Court declare the elections of the above ineligible persons to be null and void and order Local 19 to conduct a new election for the challenged offices, under the supervision of the Secretary.

Plaintiff-Intervenor, Barbara Walden, files her Complaint for the reasons stated by the Plaintiff Secretary of Labor. However, the remedy she seeks is different: Plaintiff-Intervenor requests that the Court declare the election of Treasurer and two of the subject Trustee positions to be null and void. Ms. Walden further requests that the Court declare that the already nominated and eligible candidates for Treasurer and Trustee be declared elected, without re-opening nominations or conducting and entirely new election. Ms. Walden claims that the nomination process was not defective, and therefore, a new election is not necessary or

appropriate. Thus, as Plaintiff-Intervenor claims, the appropriate remedy is for the Court to install into office the three eligible and unopposed candidates who were nominated to the disputed positions.

Defendant, on the other hand, maintains that all three subject candidates were eligible for the election and service as officers of Local 19, pursuant to the applicable eligibility requirements. Local 19 claims that the Court should "give deference to the Bakery, Confectionery, Tobacco Workers and Grain Millers International Union's ("International Union") interpretation of its Constitution," and thus, it should not disturb the election results.

## Factual Background

The general facts of this case are largely undisputed. Local 19 is a local labor organization within the meaning of sections 3(i) and 3(j) of the LMRDA, 29 U.S.C. §§ 401(i) and 402(j). It is chartered by, and subordinate to, the Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, AFL-CIO. On December 23, 1999, Local 19 issued its Notice of Nomination and Election of Officers for terms commencing in the year 2000. The nominations meeting was scheduled for January 29, 2000, and the election was scheduled for February 23, 2000. The officer positions up for election were as follows: President; Vice President; Recording Secretary; Corresponding Secretary; Financial Secretary; Treasurer; Sergeant-at-Arms; and three Trustee positions.

On January 29, 2000, the nominations meeting was held for new union officers. At the meeting, the candidates for the positions of Vice President, Financial Secretary, Recording Secretary, Corresponding Secretary, and Sergeant-at-Arms were nominated without opposition and declared elected. Also at this meeting, two candidates were nominated for the position of

Treasurer: Dan Kolar and Maryanne Young. The five Trustee candidates nominated were Pete Koleff, Vince Bianchi, Steve Solic, Scott Delbrugge, and Jon D. Boyd. The incumbent President of Local 19, Barbara Walden, challenged the nominations of Dan Kolar on the grounds that he did not meet the "working at the trade" qualification. President Walden also challenged the nominations of Pete Koleff and Vince Bianchi on the grounds that they did not satisfy the "working at the trade" requirement and they were not full-time officers. As a result, President Walden declared all three nominees to be ineligible to run for office.

Following the nominations meeting and a debate concerning the eligibility of Mr. Kolar, Mr. Koleff, and Mr. Bianchi, the International Union was called for its opinion with respect to the challenges of the aforementioned nominations. International Union President, Frank Hurt, overturned the decision of President Walden and ruled that the three gentlemen were eligible to run for office. There being no pre-election protest provisions contained within Local 19's Book of Rules or the International Union's Constitution, all three names appeared on the election ballot. Pursuant to the election, Mr. Kolar, Mr. Koleff, and Mr. Bianchi were elected to their respective positions.

On March 2, 2000, President Walden protested the February 23rd election to the Local 19 Executive Board. The Executive Board, on March 21, 2000, denied the protest. Thereafter, President Walden appealed the Board's decision to the International General Executive Board, which denied such appeal on May 31, 2000. Having exhausted all remedies available and having received a final decision in the matter, Local 19's President filed a complaint with the Secretary of Labor on June 20, 2000, pursuant to the LMRDA. The Secretary investigated the complaint and found probable cause to believe that a violation of the LMRDA, 29 U.S.C. §§ 481 *et seq.*,

-4-

had occurred. The instant complaint ensued.[1]

In the February 23, 2000 election, Dan Kolar ran for and won the position of Treasurer of Local 19. He has been a member in continuous good standing of Local 19 for several years. Mr. Kolar was employed by Local 19 until 1993. As a result of a lawsuit in 1993, between the Secretary of Labor, Local 19, Teamsters Local 507, individual trustees of the Bakers Union Local 19 Health and Welfare Plan, and individual trustees of the Bakers Union Local 19 Pension Plan, among others, a Consent Decree was entered whereby the business of benefit funds and the business of the unions were separated. Also as a result of this Decree, new positions known as "Benefit Specialists" were created. In 1993, Mr. Kolar voluntarily resigned from his employment with Local 19 and assumed one of the Benefit Specialists positions. Thus, Mr. Kolar became employed by the Cleveland Bakers and Teamsters Pension Fund, and he was employed by the Pension Fund at the time of the election and thereafter.

Plaintiff and Plaintiff-Intervenor claim that because Mr. Kolar is an employee of the Pension Fund (and not by the union), he is not "working at the trade," as required by the International Constitution. Defendant, on the other hand, maintains that Mr. Kolar is, indeed, eligible to hold the office of Treasurer because in his position he has a sufficient connection with Local 19 members, thus qualifying him as being actively employed in the trade.

In the same election, Pete Koleff and Vince Bianchi ran for and won positions of Trustee.

---

[1] The Complaint was originally filed by Alexis M. Herman, former Secretary of Labor. However, on January 20, 2001, Elaine L. Chao became Secretary of Labor, replacing Ms. Herman. Thus, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Chao was automatically substituted as Plaintiff in this action on March 27, 2001.

Both Mr. Koleff and Mr. Bianchi were members in good standing. Both gentlemen were retirees who previously served as Trustees. Mr. Koleff worked as a baker for thirty (30) years and has been a member of the Local 19 Executive Board for forty-eight (48) years. Mr. Bianchi worked as a baker for more than twenty-two (22) years and has been a member of the Local 19 Executive Board for thirty-six (36) years. Mr. Koleff retired in 1988 and Mr. Bianchi retired in 1981. Both Messrs. Koleff and Bianchi first became elected Trustees while they were working in the trade, and both members continued to be re-elected as Trustees following their retirements from the bake shops. The record shows that the Trustee positions are neither full-time nor paid positions.

Plaintiff and Plaintiff-Intervenor claim that Messrs. Koleff and Bianchi do not work at the trade as defined by the International Constitution, nor were they full-time officers or employees of the union for a period of two years prior to the election, as required. Defendant, however, asserts that because Mr. Koleff and Mr. Bianchi served as Local 19 Trustees continuously, even before their retirement, they met the qualifications to hold local office.

## Summary Judgment Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of

material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce

-7-

evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). Federal Rule of Civil Procedure 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

FED. R. CIV. P. 56(e). The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Federal Rule of Civil Procedure 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. If the opposing party:

-8-

> fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### Discussion

This action was filed pursuant to the LMRDA of 1959. 29 U.S.C. §§ 401 *et seq.* The LMRDA was enacted in order to prevent or eliminate improper practices on the part of labor organizations, employers, labor relation consultants, and their officers and representatives. 29 U.S.C. § 401(c). Plaintiff and Plaintiff-Intervenor allege that Local 19 violated 29 U.S.C. §481(e) by permitting three ineligible persons--Dan Kolar, Pete Koleff, and Vince Bianchi–to

run for offices of Treasurer and Trustee, respectively. More specifically, the parties allege that Local 19 violated the statute when it unreasonably applied its "working at the trade" candidacy requirement by allowing the aforementioned individuals to run for their respective offices. Section 481(e) provides as follows:

> In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed)....The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter.

29 U.S.C. § 481(e).

According to Plaintiff Secretary, pursuant to 29 U.S.C. § 482(c)(2), this Court should declare the election of Kolar, Koleff, and Bianchi null and void, and it should order a new election. Plaintiff-Intervenor, however, requests that the Court install into office the three eligible and unopposed candidates who were originally nominated to the disputed positions at the time of the February election. Section 482(c)(2) provides:

> If...the court finds that the violation of section 481 of this title may have affected the outcome of an election, the court shall declare the election, if any, to be null and void and direct the conduct of a new election under the supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization....

29 U.S.C. § 482(c)(2).

The eligibility requirements for elections are outlined in the International Union's 1999 Constitution as well as Local 19's Book of Laws. Specifically, the Book of Laws of Local 19 states, in relevant part, as follows:

> To qualify as a candidate for, and to serve as an Officer one must have been in continuous good standing in Local 19 and have had full membership rights in Local 19, for at least

>two (2) years prior to the date of election, and have been an Officer or Business Agent of Local 19, or have been actively employed in the trade, for the two (2) years immediately preceding the election.

Book of Laws of Local 19, Art. I, Section 3(C)(a).

>Similarly, the 1999 International Union Constitution provides as follows:

>Any member of the International Union may be elected to any offices in a local union and may serve as such an officer provided the member meets the following requirements:
>>(a) In local unions established more than two years, the member must be a continuously good-standing, dues-paying member of the International Union and the local union for at least two continuous years next prior to election in any branch of the trade under the jurisdiction of the International Union except for periods of layoff...and terminations being grieved,...or as a full-time officer or employee of the International Union or the local union....

1999 International Union Constitution, Art. XVI, Section 11. Therefore, as outlined above, in order to be eligible to run for and hold office in Local 19, a candidate must have, for the two years prior to the election, worked at the trade "under the jurisdiction of the International Union" or been a full-time officer or "employee of the International Union or the local union." *Id.*

The International Constitution defines the "jurisdiction" of the International Union as follows:

>The Bakery, Confectionery, Tobacco Workers and Grain Millers International Union shall exercise and maintain jurisdiction over all workers employed in the manufacture, production, shipping and in-plant movement of (1) all bakery products...;(2) confectionery products...; (3) all macaroni and paste products; (4) tobacco products; (5) grain, sugar and cereal products; (6) kindred products; (7) any and all food products; (8) any and all ingredients from which the foregoing products are made.

1999 International Union Constitution, Art. II, Section 1.

International Union President, Frank Hurt, was called upon for his interpretation of the International's Constitution with respect to the elections of Messrs. Kolar, Koleff, and Bianchi. President Hurt interpreted the Constitution as follows: (1) the "working at the trade" provision of

-11-

the Constitution is intended only to insure that members who run for local union office have a sufficient connection with the industry and with the members of the union so that they are familiar with members' needs and interests; and (2) the "full time officer" provision was not intended to make ineligible for office members who were eligible when first elected to union office and who maintained meaningful, unbroken connections with their local union as an officer after retirement from active employment at the trade. President Hurt based these interpretations on the fact that he was the draftsman and "principal proponent" of the "working at the trade" requirement when the requirement was adopted by the 1994 Convention. Pursuant to this interpretation, President Hurt concluded that Mr. Kolar, who was employed by the pension fund, was qualified to hold local office. He further concluded that Mr. Koleff and Mr. Bianchi, who served as Local 19 Trustees continuously since before their retirements, also met the necessary qualifications to hold local office.

A union's interpretation of its own constitution is entitled to deference as long as it is not unfair or unreasonable. *Millwright Local 1079 v. United Bhd. of Carpenters*, 878 F.2d 960, 962 (6th Cir.1989), *cert denied*, 493 U.S. 965 (1989); 29 C.F.R. § 452.3 (stating the interpretation consistently placed on a union's constitution by the responsible union official or governing body will be accepted unless the interpretation is clearly unreasonable). Under such a standard, however, a union is not free to impose simply any interpretation: "Although a union's interpretation of its own bylaws and constitution is entitled to deference, the court may apply its own definition...to vindicate the purpose of the [LMRDA], which was to guard the rights of union members against abuse by union officials." *Department of Labor v. Aluminum, Brick and Glass Workers, Local 200*, 941 F.2d 1172, 1177 (11th Cir.1991). Regardless of the deference,

-12-

when a question of interpretation arises, the union and the courts must follow the standard rules of statutory construction. *See Reich v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators*, 32 F.3d 512, 515 (11th Cir.1994). Pursuant to the rules of statutory construction, where the language is clear and unambiguous, it is not subject to interpretation. *Wirtz v. Local Union 125, International Hod Carriers' Building and Common Laborers' Union of America*, 270 F.Supp. 12, 16 (N.D.Ohio 1966).

In considering the International Union's Constitution, this Court finds that the language concerning the qualifications to hold local office is unambiguous. The Court also concludes that the three candidates--Kolar, Koleff, and Bianchi--did not satisfy the "working at the trade" or "full-time officer" requirement. Finally, in so holding, the Court finds that International Union President Frank Hurt's interpretation is unreasonable.

Dan Kolar

Mr. Kolar was employed as a Benefits Specialist for the Cleveland Bakers and Teamsters Pension Fund for the two years immediately preceding the February 23, 2000 election in which he was elected Treasurer. He has been employed by the Pension Fund since 1993, following a lawsuit between the Secretary of Labor and Local 19, among others, whereby a Consent Decree dictated that the business of benefit funds and the business of the unions be separated. There is no evidence that the Fund is engaged in, or related to, the manufacture, production, shipping, or in-plant movement of a food product. There is, likewise, no evidence that the Fund is engaged in the manufacture, production, or shipping of a "kindred product." Rather, the Pension Fund provides pension benefits to members of Local 19, Teamsters Local 507, and Bakers Local 56. Thus, Mr. Kolar is not working at the trade "under the jurisdiction of the International Union."

-13-

See 1999 International Union Constitution, Art. II, Section 1.

The record also shows that the Fund is a separate and distinct entity; and effective March 1, 1993, the sharing of employees between the union and the fund is prohibited. Moreover, Mr. Kolar is not listed as an employee on Local 19's Annual Report, Form LM-2. Thus, it is clear that he is not an "employee" of the union.

Finally, Mr. Kolar is not a "full-time officer" for the two continuous years immediately prior to the election. See Local 19's Book of Laws, Art. I, Section 3(C)(a); 1999 International Union Constitution, Art. XVI, Section 11. Following the resignation of then-Treasurer, Vilius Jurevicius, Local 19's Executive Board appointed Mr. Kolar to fill the position of Treasurer on October 23, 1999. While President Walden contested the appointment, the protest was ultimately denied by International President, Frank Hurt. The election at issue was held on February 23, 2000. Therefore, the required two-year period had not been satisfied.

The Court finds the language of Local 19's Book of Laws and International's Constitution to be clear and unambiguous; and President Hurt's interpretation of the same is unreasonable. The fact that Mr. Kolar maintained "sufficient connections" with the members of Local 19 is insufficient for purposes of the unambiguous eligibility requirements of holding local office. The history of the Constitution dictates that the candidate actually be "working at the trade." This is especially true in light of the fact that the 1994 constitutional amendment to Article XVI, Section 11, setting forth the qualifications to hold local office, added that specific language. Furthermore, Resolution No. 55, submitted by the General Executive Board, which amends Article XVI, Section 11, provides that:

> [t]here has been a tradition in the Union of selecting officers of local unions and the

-14-

> International Union from among members who are actually working at the trade or who are actually working for a local union or the International Union...and...[i]t serves the purposes of the Union that its officers at both the local and international level actually be employed in the trade or in the BC&T family of unions as it assures that union officers will be familiar with the problems of workers in their jurisdiction....

Resolution No. 55. Thus, because Mr. Kolar was not working at the trade under the jurisdiction of the International Union, nor was he a full-time officer or employee for two years immediately preceding the February election, he was ineligible to be a candidate for office in that election.

Pete Koleff and Vince Bianchi

Both Mr. Koleff and Mr. Bianchi are retirees who previously served as Trustees while they were working in the trade . Mr. Koleff worked as a baker for thirty (30) years and retired in 1988. Mr. Bianchi worked as a baker for more than twenty-two (22) years and retired in 1981. Both Messrs. Koleff and Bianchi first became elected Trustees while they were working in the trade, and both members continued to be re-elected as Trustees following their retirements from the bake shops.

As evident from their retirement, Mr. Koleff and Mr. Bianchi are not actively "working at the trade." In addition, the record shows that neither candidate is a full-time officer or employee. In fact, the Trustee position is not a full-time or paid position. According to Defendant, both gentlemen are considered volunteers; Mr. Koleff received $1,700 in compensation in two years, while Mr. Bianchi received no earnings. The office of Trustee meets only four times per year. Therefore, Messrs. Koleff and Bianchi did not meet the eligibility requirements set forth in the Constitution or the Book of Laws.

President Hurt maintains that, despite these facts and the Constitution's language concerning a "full-time officer," the requirement as stated was not intended to disqualify

individuals with their status. President Hurt claims that because Koleff and Bianchi have held office continuously throughout their retirement, they are qualified. However, in light of the unambiguous language of Article XVI, Section 11, the Court finds President Hurt's interpretation unreasonable. There is nothing in the Constitution to support the President's interpretation. In fact, the opposite is true. The Constitution provides that "[i]t is important that elected officers continue to meet the qualifications for nomination and election while they are serving as officers." Resolution No. 55. The retirees holding a non-paid, part-time position cannot be said to "continue to meet the qualifications" when they are neither actively working at the trade nor full-time officers or employees of the union. Accordingly, Mr. Koleff and Mr. Bianchi were ineligible to run for office in the election of February 23, 2000.

### The Remedy

This Court has found that Mr. Kolar, Mr. Koleff, and Mr. Bianchi were ineligible to seek office in Local 19's election held on February 23, 2000. Thus, Defendant violated 29 U.S.C. § 481(e) in permitting the ineligible members to seek such office, as the candidates did not satisfy the qualification requirements set forth in Local 19's Book of Laws and International's 1999 Constitution. Pursuant to 29 U.S.C. § 482(c)(2), if the Court finds that the violation of Section 481 may have "affected the outcome of an election," the court "shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization." *Wirtz v. Hotel, Motel and Club Employees, Local 6*, 391 U.S. 492, 505 (1968); 29 U.S.C. § 482(c)(2).

In this case, the Court finds that the violation of Section 481--permitting ineligible

-16-

members to seek local office--did, indeed, affect the outcome of the election. If Defendant had not permitted the ineligible candidates to run, it is possible that additional candidates would have been nominated for, and won, such offices. More importantly, it is likely that Kolar's, Koleff's, and Bianchi's opponents would have been elected Treasurer and Trustee, respectively. Therefore, pursuant to 29 U.S.C. § 482(c)(2), the Court hereby declares the election of Dan Kolar, Pete Koleff, and Vince Bianchi void. Due to the fact that such election occurred more than one and a half years ago, and circumstances and members undoubtedly have changed, the Court directs the conduct of a new election of Treasurer and two Trustees, under the Supervision of the Secretary.

## Conclusion

Based upon the foregoing, the Court finds there are no genuine issues of material fact which remain to be litigated, and Plaintiff is entitled to judgment as a matter of law. Local 19 members, Dan Kolar, Pete Koleff, and Vince Bianchi, were ineligible for the offices of Treasurer and Trustee, respectively. Thus, Defendant violated the Labor Management Reporting and Disclosure Act of 1959 by permitting the February 23, 2000 election of such officers. Moreover, the Court finds that such violation has affected the outcome of the election; and as such, the Court declares the election of Mr. Kolar, Mr. Koleff, and Mr. Bianchi void and hereby orders the conduct of a new election for those offices.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: November 9, 2001